IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| STRIKE 3 HOLDINGS, LLC,<br><br>                          Plaintiff,<br><br>        v.<br><br>JOHN DOE SUBSCRIBER ASSIGNED IP<br>ADDRESS 173.71.68.16,<br><br>                          Defendant. | Civil No. 18-2674 (JHR/JS) |
| STRIKE 3 HOLDINGS, LLC,<br><br>                          Plaintiff,<br><br>        v.<br><br>JOHN DOE SUBSCRIBER ASSIGNED IP<br>ADDRESS 76.116.36.190,<br><br>                          Defendant. | Civil No. 18-12585 (NLH/JS) |
| STRIKE 3 HOLDINGS, LLC,<br><br>                          Plaintiff,<br><br>        v.<br><br>JOHN DOE SUBSCRIBER ASSIGNED IP<br>ADDRESS 76.116.76.28,<br><br>                          Defendant. | Civil No. 18-12586 (JHR/JS) |

```
┌─────────────────────────────────────┐
│ STRIKE 3 HOLDINGS, LLC,              │
│                                      │
│                   Plaintiff,         │
│                                      │        Civil No. 18-14114 (JHR/JS)
│      v.                              │
│                                      │
│ JOHN DOE SUBSCRIBER ASSIGNED IP      │
│ ADDRESS 73.160.162.60,               │
│                                      │
│                   Defendant.         │
└─────────────────────────────────────┘
```

## OPINION

This Opinion addresses whether to grant Strike 3 Holdings, LLC ("Strike 3") leave to conduct expedited discovery in its uniform "John Doe" copyright infringement cases. Strike 3 owns the copyrights to its adult entertainment movies, i.e., pornography. In contravention of the normal course of discovery, Strike 3 seeks leave to serve subpoenas before a Fed.R.Civ.P.26(f) conference in order to identify alleged "John Doe" copyright infringers of its movies.  Strike 3 argues that unless its motions are granted it is not able to identify infringers and stop infringement.  This Opinion adds to the mountain of case law on the issue.

After a deep dive into Strike 3's practices, including two evidentiary hearings and extensive briefing, the Court concludes that Strike 3's requests for expedited discovery are DENIED.  The Court finds that Strike 3 has not established good cause to take the requested discovery and the discovery is unreasonable under the present circumstances.[1]

---

[1] Throughout this Opinion the Court will refer to an exemplar complaint or

The most fundamental basis of the Court's decision is its conclusion that, as pleaded, Strike 3's complaints are futile. The Court denies Strike 3 the right to bootstrap discovery based on a complaint that does not pass muster under Fed.R.Civ.P.12(b)(6). Further, even if Strike 3 pleads a cognizable copyright infringement claim, the Court would still deny its requests for expedited discovery. Good cause does not exist because: (1) Strike 3 bases its complaints on unequivocal affirmative representations of alleged facts that it does not know to be true; (2) Strike 3's subpoenas are misleading and create too great of an opportunity for misidentification; (3) the linchpin of Strike 3's good cause argument, that expedited discovery is the only way to stop infringement of its works, is wrong; (4) Strike 3 has other available means to stop infringement besides suing individual subscribers in thousands of John Doe complaints; (5) the deterrent effect of Strike 3's lawsuits is questionable; (6) substantial prejudice may inure to subscribers who are misidentified; and (7) Strike 3 underestimates the substantial interest subscribers have in the constitutionally protected privacy of their subscription information. On balance, therefore,

---

case. This refers to C.A. No. 18-14114(JHR/JS) which is representative of all of Strike 3's complaints. Strike 3 acknowledges its complaints are uniform. TR1 12:15-19. The Court held two evidentiary hearings regarding Strike 3's discovery requests. The transcript from the first hearing will be referred to as "TR1" and the second "TR2." Emilie Kennedy, Esquire, Strike 3's General Counsel, John Bunting, forensics consultant, and John S. Pasquale, Sr. Project Manager with 7 Riber Systems, LLC, a cyber security firm, testified for Strike 3.

the Court finds that the overall administration of justice and the prejudice to subscriber defendants outweighs Strike 3's interest in expedited discovery.

It is not lost on the Court that its ruling may make it more difficult for Strike 3 to enforce its copyrights against potential infringers. However, as the Third Circuit recently stated, "[c]ourts must enforce the law even when the results seem inequitable." Diabate v. Attorney General of U.S.A., No. 18-3397, 2019 WL 5061399, at *1 (3d Cir. Oct. 9, 2019). The Court is aware that it has granted expedited discovery in past cases filed by Strike 3 and other copyright frequent filers.[2] However, as was famously said, the Court "see[s] no reason why it should be consciously wrong today because [it] was unconsciously wrong yesterday." Massachusetts v. United States, 333 U.S. 611, 639-40 (1948) (J. Jackson, dissenting opinion). Since its previous Orders were entered, new relevant case law has been published and the Court has learned new material information that was not previously presented, all of which is discussed in this Opinion.[3]

**Background**

---

[2] See, e.g., Strike 3 Holdings, LLC. V. John Doe…, C.A. No. 17-12784 (JHR/JS), 2018 WL 2010422 (D.N.J. April 24, 2018); Voltage Pictures v. John Does 1-60, C.A. No. 12-6885 (RMB/JS), 2013 WL 12406868 (May 31, 2013; see also Plastic the Movie Limited v. John Doe Subscriber, C.A. No. 15-2446 (JHR/JS), 2015 WL 4715528 (D.N.J. August 7, 2015) (denying motion to quash subpoena directed to Comcast requesting the identity of owner of listed IP address).
[3] The Court has the power to revisit its prior interlocutory decisions and to undermine an earlier conclusion. PIRG v. Magnesium Elektron, Inc., 123 F.3d 111, 116-17 (3d Cir. 1997).

### 1. General Background

Strike 3 was formed in 2015 and is the intellectual property holding company of General Media Systems ("GMS"). GMS was founded in 2014 and produces and distributes adult entertainment on its websites. According to GMS's Chief Creative Officer, it is the most pirated adult content in the world. Decl. of Greg Lansky ¶25, Doc. No. 4-2. Strike 3 started filing its copyright complaints in October 2017 (id. 10-11) and has filed over 3,000 complaints to date. As of June 2019, Strike 3 filed 311 cases in New Jersey. More than half of the cases (161) have been dismissed without prejudice for various reasons. Strike 3 Letter Brief ("LB") at 2-5 (June 11, 2019). Like many of its colleagues in this and other jurisdictions, the Court has managed many of Strike 3's cases. Strike 3's modus operandi is essentially the same in all of its cases. Strike 3 files "John Doe" complaints naming unidentified assigned subscribers to an Internet Protocol ("IP") address who have been identified by its contractor as an infringer on the BitTorrent ("BT") network. BT is a software protocol that allows users to distribute data through peer-to-peer networks. The BT network permits users to download, copy and distribute Strike 3's movies. The only pleaded connection in Strike 3's complaints between the "John Doe" defendant and the alleged infringement is that the "John Doe" is the subscriber to the listed IP address. Strike 3 acknowledges it does not know if the

subscriber or someone else downloaded its works.

    After filing its complaint, Strike 3 files ex parte motions for expedited discovery requesting leave to serve a subpoena on the John Doe's Internet Service Provider ("ISP"), i.e., Comcast, Yahoo, Verizon, etc. Although multiple infringements are listed in its complaints, Strike 3's subpoenas only ask for the name of the IP subscriber for one infringement.   Thus, as to the exemplar complaint, even though the alleged infringement occurred on 31 occasions from December 3, 2017 to August 16, 2018, Strike 3's subpoena only asks for the subscriber's name on July 27, 2018. Due to dynamic IP addresses, however, the subscriber identified in response to Strike 3's November 13, 2018 subpoena, may or may not be the same person who subscribed to the IP address on July 27, 2018.  After Strike 3's motion for expedited discovery is granted and its subpoena is served and responded to, the ISP identifies the current subscriber to the listed IP address.  Importantly, this is not necessarily the same person who subscribed to the IP address on July 27, 2018.  Strike 3 then conducts an additional investigation and either settles, dismisses, or amends its complaint to specifically name the IP subscriber.  In the past, the Court has granted Strike 3's motions requesting expedited discovery.  Recently, however, numerous courts have delved deeper into Strike 3's complaints, discovery requests, and practices, leading the Court to reexamine the propriety of granting Strike

6

3's motions.  The effort has been long and arduous but enlightening and worthwhile.

The genesis of this Opinion is the November 6, 2018 Opinion of the Honorable Royce L. Lamberth, U.S.D.J.  Strike 3 Holdings, LLC v. John Doe, 351 F. Supp.3d 160 (D.D.C. 2018), on appeal, No. 18-7188 (Dec. 19, 2018).  In a blistering Opinion, Judge Lamberth denied Strike 3's ex parte request for expedited discovery akin to the motions at issue herein.  Judge Lamberth accused Strike 3 of being a "copyright troll," of using technology that is "famously flawed," of preying on "low-hanging fruit," of not caring whether the "defendant actually did the infringing," and flooding the courthouse "with lawsuits smacking of extortion."  The Opinion raised red flags regarding Strike 3's lawsuits that caused this Court to explore the issue further.

In Order to get to the bottom of the matter, the Court issued an Order to Show Cause ("OSC") to Strike 3 directing it to show cause why the Court should not adopt and follow Judge Lamberth's Opinion and Order and deny Strike 3's discovery motions.[4]  Since that time, the Court has received extensive briefs and background materials and held two evidentiary hearings.[5]  The Court will

---

[4] At the time the OSC was issued six (6) Strike 3 cases were pending before the Court.  Since that time, Strike 3 voluntarily dismissed two (2) of the cases.  The remaining four (4) cases are stayed pending the issuance of this Opinion.  Throughout the relevant hearings, the Court has used C.A. No. 18-14114 (JHR/JS) as an exemplar.  The case will be discussed throughout this Opinion.

[5] Strike 3's main spokesperson was Emille Kennedy, Esquire, its General Counsel.  Kennedy is responsible for coordinating Strike 3's nationwide

summarize what it has learned and explain in detail why Strike 3's requests for expedited discovery are denied.

2. Strike 3's Investigation and John Doe Complaints

Strike 3's infringement investigation starts with IPP International UG ("IPP") located in Germany. Strike 3 hired IPP to track the infringement of its copyrights across the BT network. TR1 15:5-19. IPP does this by crawling the BT file distribution network and establishing a direct connection with the alleged infringer's IP address.

An IP address is a unique number used by a computer to access the internet. In order to interact with other computers attached to the internet, a computer must be assigned an internet protocol or IP address. An IP address is a string of up to twelve numbers separated by dots – for example 73.160.162.60. State v. Reid, 194 N.J. 386, 390 (2008). "IP addresses can be dynamic (the number changes each time the computer accesses the Internet) or static (the number remains the same each time the computer accesses the Internet).". United States v. Norris, 938 F.3d 1114, 1116 n. 2 (9th Cir. 2019). After IPP identifies an IP address that is used by an infringer to distribute Strike 3's copyrighted works, it downloads pieces of Strike 3's works from the alleged infringer.

---

litigation and has hands-on familiarity with its policies and practices. Kennedy has the most broad-based knowledge concerning Strike 3's litigation and is authorized to speak on behalf of the company. TR2 2:11-19. Kennedy approves every filed complaint. TR1 13:16-22.

IPP records the infringer's IP address, the version of the BT software used, and the date and time of the infringement. In addition to identifying Strike 3's works that are downloaded, IPP identifies the ISP and other content downloaded using the subscriber's IP address. TR1 12:1-10. IPP records everything in a PCAP, which stands for "packet capture" and is a forensically sound interface for recording network traffic. TR1 17:1-22. Decl. of Tobias Fisher at ¶8, Doc. No. 4-3. IPP sends this data to Strike 3 on a monthly basis. TR1 15:24 to 16:25.

According to Strike 3, it only trys to "stop the worst infringers."[6] TR1 18:4-11. This accounts for why Strike 3 may be aware that a particular IP address is being used to infringe its works for a significant period of time before a complaint is filed. For example, although the exemplar complaint was filed on September 20, 2018, the subscriber's infringement allegedly occurred on 31 separate occasions from December 3, 2017 to August 16, 2018. Thus, Strike 3 was aware of the ongoing infringement of its movies for at least nine (9) months before it filed its complaint.

After Strike 3's data analytics contractor identifies a serial infringer, Strike 3 runs the IP address through Maxmind, a geolocation technology. Maxmind gives Strike 3 an approximate location of where the IP address is located.[7] Id. 49:6-1; 75:11-

---

[6] Generally, Strike 3 looks for IP addresses that infringe a minimum of 25 works over a couple of months. TR1 19:10-14.
[7] Strike 3's consultant used the phrase "general region." TR1 151:20.

20.   Strike 3 uses the Maxmind result to identify the appropriate jurisdiction in which to file suit. In sum, therefore, the only information Strike 3 has when it files its John Doe complaints is the infringing IP address, the identity of the ISP, the date and time of the infringement, the approximate location of the infringer, the number of works infringed, and other content downloaded.

Although Strike 3's John Doe complaints name as the defendant the unidentified IP subscriber, Strike 3 acknowledges it does not know who infringed its works.  Strike 3 also acknowledges it only has a "fairly good reason to believe that it is the subscriber or someone in the [household]."  TR1 20:21-22.  Strike 3 does not know who or how many people live in the household (TR1 22:7-22) and it "[h]as no idea if there's anyone else in the house."  TR2 92:13-19.  In addition, Strike 3 is not sure whether the subscriber lives at the location associated with the IP address.  TR2 29:3-4.  Also, because of dynamic IP addresses, Strike 3 does not know for sure if the subscriber identified in response to its subpoena is the same subscriber at the time of the alleged infringement which occurred months earlier.

Despite its admitted lack of knowledge of who downloaded its works, whether the subscriber lives at the identified address, and who lives at the address, Strike 3's complaints unequivocally aver in conclusory fashion that the listed subscriber to the identified

10

IP address directly infringed its copyrights.  This is evidenced by the following averments in the exemplar complaint which named the defendant as "John Doe subscriber assigned IP Address 73.160.162.60":

1. "Defendant used the BitTorrent file network to illegally download and distribute plaintiff's copyrighted motion pictures."  ¶ 23.

2. "While Defendant was infringing, . . . ." ¶ 25.

3. "Defendant downloaded, copied, and distributed a complete copy of each of plaintiff's works without authorization."  ¶ 27.

4. "Defendant's infringement is continuous and ongoing." ¶ 30.

5. "Defendant copied and distributed the constituent elements of plaintiff's works using the BitTorrent protocol."  ¶ 36.

Strike 3 makes these unequivocal averments even though it recognizes the subscriber may not have downloaded its works.  TR1 20:23-25 to 21:1; 21:8-16, 21-22.  After Strike 3 files its complaint, it files a motion for expedited discovery asking for leave to serve a subpoena on the identified ISP.  Strike 3 argues this is necessary since only the ISP can match the name of the customer to an IP address. After Strike 3 receives the name of the currently listed subscriber to the IP address in question, it conducts an additional investigation and decides whether to amend the complaint to name the subscriber or dismiss the complaint.[8]

---

[8] Strike 3 estimates that 35 to 40 percent of the time it decides to dismiss and not amend its complaints.  TR1 59:2-8.

In the interim, Strike 3 may also settle with the subscriber or someone else.

**Discussion**

    1. <u>The Standard to Obtain Expedited Discovery</u>

    Critical to the Court's ruling is the standard to use when deciding if expedited discovery is appropriate. Importantly, the fact that the requested discovery is relevant is not determinative. Instead, in order to decide if good cause exists to grant expedited discovery the Court examines all relevant considerations. Stated another way, the "totality of the circumstances."

    Pursuant to Fed. R. Civ. P. 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." However, "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)." Fed. R. Civ. P. 26(d)(1). District courts possess broad discretion in the management of the discovery process and can expedite or otherwise alter its timing or sequence. <u>See</u> <u>id</u>. Unlike most other discovery provisions in the Federal Rules, Rule 26(d) does not give any guidance as to the standard to use to determine if expedited discovery is appropriate. <u>Techtronic</u> <u>Indus. N. Am., Inc. v. Inventek Colloidal Cleaners LLC</u>, C.A. No. 13-4255 (NLH/JS), 2013 WL 4080648, at *1 (D.N.J. Aug. 13, 2013).[9]

---

[9] Consequently, one author estimates "that courts have developed more than twenty standards for construing Rule 26(d)(1)." <u>See</u> Jesse N. Panoff, <u>Rescuing</u> <u>Expedited Discovery from Courts & Returning It to FRCP 26(d)(1)</u>, 64 Ark. L.

Courts in this District have applied one of two standards to assess whether expedited discovery is appropriate. See Sawhorse Enterprises, Inc. v. Church & Dwight Co., C.A. No. 12-6811 (FLW), 2013 WL 1343608, at *2 (D.N.J. Apr. 3, 2013). The first is a more stringent standard, "akin to that of a preliminary injunction," known as the Notaro test.[10]  Id.; see also Gucci America Inc. v. Daffy's, Inc., C.A. No. 00-4463, 2000 WL 1720738, *5-6 (D.N.J. Nov. 14, 2000) (citing Notaro, 95 F.R.D. at 405). The second is the less stringent standard of "good cause" or "reasonableness," often referred to as the "good cause" test. See, e.g., Manny Film LLC v. Doe Subscriber Assigned IP Address 50.166.88.98, 98 F. Supp. 3d 693 (D.N.J. 2015); Techtronic, 2013 WL 4080648, at *1. Courts in this District routinely apply the "good cause" test. See Strike 3 Holdings, LLC v. Doe, C.A. No. 19-16182(MCA)(MAH), 2019 WL 3985628, at *2 (D.N.J. Aug. 23, 2019).  In a previous case, this Court adopted the so-called "reasonableness" or "good cause" standard.  Techtronic, at *1.  In other words, in order to decide if expedited discovery is appropriate, the Court looks at the totality of the circumstances and the balancing of the interests of the plaintiff and defendant.  Better Packages, Inc. v. Zheng,

Rev. 651, 651 (2011)).

[10] The Notaro test requires the requesting party to demonstrate: "(1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted." Notaro v. Koch, 95 F.R.D. 403, 405 (S.D.N.Y. 1982).

C.A. No. 05-4477(SRO), 2006 WL 1373055, at *3 (D.N.J. May 17, 2006) (the good cause test "weighs the need for expedited discovery by considering the overall administration of justice against the prejudice to the responding party."). The Court will apply this standard here.

Not surprisingly, the burden is on the moving party to show that expedited discovery is appropriate. Techtronic, at *2. Good cause exists where the "need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." Malibu Media, LLC v. John Doe, C.A. No. 16-942 (KM/MAH), 2016 WL 952340, *1 (D.N.J. Mar. 14, 2016) (citation omitted). A non-exclusive list of factors Courts typically examine are: (1) the timing of the request in light of the formal start to discovery; (2) whether the request is narrowly tailored; (3) the purpose of the requested discovery; (4) whether the discovery burdens the defendant; and (5) whether the defendant can respond to the request in an expedited manner. See Better Packages, 2006 WL 1373055, at *3. In ruling on a motion for expedited discovery, courts consider "the entirety of the record . . . and the reasonableness of the request in light of all of the surrounding circumstances[.]".[11]  Better Packages, Inc., 2006 WL

---

[11] See Gucci, 2000 WL 1720738, *6 (applying the Notaro factors upon finding "the allegations of the complaint were without basis" and calling into question plaintiff's "real motive" in the lawsuit").

1373055, at 3 (citation and quotation omitted).

For good reason, Courts apply "careful scrutiny when plaintiffs make [discovery] requests ex parte." Strike 3 Holdings, LLC v. Doe, 331 F.R.D. 14, 16 (E.D.N.Y. 2019) (citation and quotation omitted). This is understandable since expedited discovery is the exception rather than the norm. Techtronic, at *2; Columbine Ins. Co. v. Seecandy.com, 185 F.R.D. 573, 577 (N.D. Cal. 19999) (expedited discovery is "rare"). Further, this Court noted in Techtronic: "[s]ince expedited discovery upsets the normal orderly progression of discovery, there should be a good reason to order it to occur. Otherwise, parties will expect expedited discovery in every case."; see also Leone v. Towanda Borough, C.A. No. 3:12-0429, 2012 WL 1123958, at *3 (M.D.Pa. Apr. 4, 2012) ("[E]x parte motions are so inherently unfair that such relief should be granted only in the rarest of circumstances."). In addition, if not policed properly, ex parte expedited discovery may create an irresistible temptation for trickery and gamesmanship.

Plaintiff asks the Court to analyze its request for expedited discovery using the Second Circuit's five-factor test found in Arista Records, LLC v. Doe 3, 604 F.3d 110, 119 (2nd. Cir. 2010).[12]

_____

[12] The five "principal factors" discussed in Arista are: (1) the concreteness of plaintiff's showing of a prima facie claim of actionable harm; (2) the specificity of the discovery request; (3) the absence of alternative means to obtain the subpoenaed information; (4) the need for the subpoenaed information to advance the claim; and (5) the objecting party's expectation

*Id.* at 3. The Court declines Strike 3's request to pigeonhole the Court's discretion. The <u>Arista</u> standard has not been adopted by the Court and is not typically used in this District. Further, as has been noted by at least one court, the utility of the <u>Arista</u> standard is limited. <u>Strike 3 Holdings, LLC</u>, 331 F.R.D. at 17. In any event, the Court's ruling would be the same even if the Court followed <u>Arista</u>.

For the reasons to be explained in detail, the Court finds that Strike 3 fails to establish good cause for expedited discovery under the "good cause" or <u>Arista</u> standard. The Court's prior Orders were founded upon material misconceptions concerning Strike 3's allegations and the underlying technological proof submitted in support of Strike 3's motions. Further, new relevant information has been elicited that the Court was not aware of at the time it issued its previous Orders. In addition, new persuasive case law has been published. Ultimately, the Court agrees with Judge Lamberth that Strike 3's expedited discovery requests should be denied, but its reasoning is a bit different.

     2.  <u>Underlying Assumptions</u>

The Court deems it important to clarify several assumptions that underlie its decision so there is no misunderstanding about its reasoning. First, the fact that Strike 3 is involved in the adult entertainment business is irrelevant to the Court's

---

of privacy. <u>See</u> <u>Arista</u>, 604 F.3d at 119.

decision.  Unless Congress or the courts carve out an exception for pornography, which has not been done to date, Strike 3's lawful copyrights deserve as much or as little protection as the law provides.  See Strike 3 Holdings, LLC v. Doe, No. 18-Cv-2648 (VEC), 2019 WL 78987, at *4 (S.D.N.Y. Jan. 2, 2019) (stating that Strike 3's "interest in protecting its copyrighted material from infringement . . . is not lessened by the salacious content of the material.").  Two, no one can reasonably dispute that an entity whose copyrights are infringed should have recourse against the infringer.  Nonetheless, as discussed herein, a legal remedy does not exist for every wrong.  Strike 3 is not entitled to relief simply because it was wronged. Three, the Court acknowledges that the information Strike 3 requests is relevant under Fed. R. Civ. P. 26(b)(1).  Even if an IP subscriber is not the infringer, he/she is likely to know relevant information regarding who used their internet access.  Nonetheless, relevancy is not the touchstone to grant expedited discovery.  If it was, expedited discovery could become the rule rather than the exception.  Four, even though numerous cases discuss the fact that Strike 3 has or may engage in abusive litigation practices, the Court has not seen evidence that this occurred in its cases.[13]

---

[13] To be clear, the Court cannot vouch that this has not occurred.  The Court can only say it has no knowledge this occurred.

3. Good Cause Does Not Exist for Expedited Discovery Because Strike 3 Does Not Plead a Cognizable Claim, i.e., its Complaints are Futile

The most fundamental reason the Court denies Strike 3's request for expedited discovery, and why the Court concludes its discovery requests are not reasonable, is that Strike 3 does not plead a cognizable claim in its complaints.  It would be anomalous to authorize discovery based on a John Doe complaint that does not pass muster under Fed. R. Civ. P. 12(b)(6), in order to permit Strike 3 to name an individual subscriber who then files a meritorious motion to dismiss.  Especially in the John Doe context where a complaint must be carefully scrutinized and a viable defendant is not present to challenge the complaint, it is unreasonable to authorize Strike 3 to bootstrap discovery onto a futile complaint. This is not consistent with the guidepost that the Federal Rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

The Court understands that in the present context it is not deciding a motion to dismiss.  However, if the Court did not examine the futility of a John Doe complaint it would create too great of an opportunity for trickery and gamesmanship.[14] Further, in the context of deciding whether expedited discovery should be

---

[14] To be sure, the Court is not saying this occurred here.

granted, futility is a relevant consideration in a totality of the circumstance analysis. The Court's sentiment is supported by other opinions. Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999) (discovery to identify a defendant is not appropriate when "the complaint would be dismissed on other grounds."); Breaking Glass Pictures, LLC v. John and Jane Does 118-162, et al., No. CV-13-00600-PHX-ROS; 2013 WL 3930474, at *2 (D. Ariz. July 29, 2013) ("Early discovery is not appropriate when the complaint would be dismissed on other grounds."); Criminal Productions, Inc. v. Doe, Case No. 16-cv-2352 WQH (JLB), 2016 WL 6581850, at *1 (S.D. Cal. Nov. 7, 2016) (citation and quotation omitted) (in order to decide if good cause exists to grant expedited discovery, the plaintiff "should establish to the Court's satisfaction that plaintiff's suit against defendant could withstand a motion to dismiss.").

Turning to the viability of Strike 3's form complaints, the Court finds that, as pleaded, Strike 3's complaints are futile. In order to make out a prima facie claim of copyright infringement two elements must be met: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are the original. Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc., 499 U.S. 340, 361 (1991). The Court does not take issue with the first element. However, Strike 3's complaints do not satisfy the second element.

Scores of cases address whether Strike 3's form complaints pass muster. Admittedly the case law is split. The Court recognizes that whether by virtue of inertia or some other reason, the majority view is that at least at the pleading stage of a case, Strike 3's complaints withstand dismissal.[15] However, although Strike 3 can cite to a legion of cases upholding its John Doe complaints, a substantial number of cases take a contrary view. The Court sides with the cases that hold it is not sufficient to merely allege in a pleading that the defendant is a subscriber of an IP address traced to infringing activity. Consequently, the Court will not authorize Strike 3 to take discovery premised on a futile John Doe complaint.

In order to survive a motion to dismiss, a complaint must contain sufficient factual matter accepted as true to state a claim to relief that is plausible on its face. <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). Importantly, a plaintiff's obligation to provide the grounds of his/her entitlement to relief requires more than labels and conclusions and a formulaic recitation of the elements of a cause of action. <u>Id</u>. at 555. While the plausibility standard is not a probability requirement, "a complaint must show more than a sheer possibility that the

---

[15] Recent representative cases taking a position contrary to that of this Court are <u>Strike 3 Holdings, LLC v. John Doe</u>, 1:18-cv-01490 EAW, 2019 WL 1529339 (W.D.N.Y. Apr. 8, 2019) and <u>Strike 3 Holdings, LLC v. John Doe</u>, No. 19-cv-00723-JCS, 2019 WL 2996428 (N.D.Cal. July 9, 2019).

defendant acted unlawfully." <u>Id</u>. at 678.  Facts merely consistent with a defendant's liability fall short of a plausible entitlement to relief.  <u>Id</u>. at 557.

Strike 3's complaints are devoid of facts sufficient to show it is entitled to relief from the named John Doe/IP subscriber.  The only material fact pleaded in Strike 3's complaints is that the listed IP address is associated with the downloading of Strike 3's works and the John Doe is the subscriber of the address.  All other material averments in Strike 3's complaints, e.g., that the John Doe subscriber downloaded Strike 3's works, are conclusory statements, not facts.  If Strike 3's complaints are stripped of their conclusory statements, they are left with the notion that merely subscribing to an IP address that downloaded copyrighted works is sufficient to make out a cause of action for copyright infringement.  This is not sufficient.  As stated in <u>Twombly</u>, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown - that the pleader is entitled to relief." <u>Twombly</u>, 550 U.S. at 678.

Despite its lack of knowledge of who downloaded its works, Strike 3 argues its complaints pass muster because it is plausible the IP subscriber was the infringer.  For the reasons just discussed, the Court disagrees.  No Third Circuit decision addresses the pleading issue presented by Strike 3's complaints.

Importantly, however, the only Circuit Court decision on point supports the Court's holding.  See Cobbler Nevada, LLC v. Gonzales, 901 F.3d 1142, 1145 (9th Cir. 2018).  In Cobbler, the Ninth Circuit decided "whether a bare allegation that a defendant is the registered subscriber of an [IP] address associated with infringing activity is sufficient to state a claim for direct contributory infringement."  Id. at 1144.  Like this case, the only allegation connecting Gonzales to infringing activity was that Gonzales was the registered owner of the IP address associated with the alleged infringement.  In affirming the District Court's dismissal of the plaintiff's complaint, the Court wrote:

> The direct infringement claim fails because Gonzales' status as the registered subscriber of an infringing IP address, standing alone does not create a reasonable inference that he is also the infringer.  Because multiple devices and individuals may be able to connect via an IP address, simply identifying the IP subscriber solves only part of the puzzle. Plaintiff must allege something more to create a reasonable inference that a subscriber is also an infringer.

Id. at 1145.

The complaint in Cobbler is similar to Strike 3's form complaints in that the only connection between the John Doe defendant and the alleged infringement is that the defendant is the registered internet subscriber.  This is not enough to plead a valid claim.  As noted in Cobbler:

> This is a situation where a complaint pleads facts that are merely consistent with defendant's liability . . . stopping short of the line between          possibility and

plausibility of entitlement to relief . . . . The allegations are not enough to raise a right to relief above a speculative level.

Cobbler, 901 F.3d at 1147 (citations and quotations omitted).

Cobbler is not an outlier and its holding has been followed in numerous cases. Venice PI, LLC v. Huseby, No. C17-1160 TSZ, 2019 WL 1572894, at *1 (W.D. Wash. Apr. 11, 2019) ("[T]he Ninth Circuit made clear [in Cobbler] that a copyright infringement claim based merely on a defendant's status as the subscriber of an IP address associated with infringing activity does not cross the threshold of 'plausibility' that pleadings in federal court must satisfy."); Malibu Media, LLC v. John Doe Subscriber, No. 18C450, 2018 WL 6446404, at *3 (N.D.Ill. Dec. 10, 2018) ("This Court agrees with the Ninth Circuit and those courts that have found that a plaintiff must allege more than simply the registration of an IP address to an individual in order to proceed against that individual for copyright infringement."); Breaking Glass Pictures, LLC, 2013 WL 3930474, at *2 (affirming decision denying expedited discovery and stating, "the complaint contains no factual allegations setting forth that the subscribers were, in fact, the individuals using the internet connection at the relevant time." Also finding plaintiff has not stated plausible claims against the subscribers because although the complaint was consistent with the subscriber's liability for copyright infringement, the "allegations are also consistent with the subscribers not being

23

liable."); <u>Strike 3 Holdings, LLC v. Doe</u>, 351 F. Supp. 3d 160, 164 (D.D.C. 2018) ("Strike 3 could not withstand a 12(b)(6) motion in this case without resorting to far more intensive discovery machinations sufficiently establishing defendant did the infringing[.]"); <u>PTG Nevada, LLC v. Chan</u>, No. 16C1621, 2017 WL 168188, at *2 (N.D.Ill. Jan. 17, 2017)(collecting cases)("This Court agrees with those courts that have found that the plaintiff needs to allege more than just the registration of an IP address to an individual in order to proceed against that individual for copyright infringement."); <u>In re BitTorrent Adult Film Copyright Infringement Cases</u>, 296 F.R.D. 80, 84 (E.D.N.Y. 2012)("[I]t is no more likely that the subscriber to an IP address carried out . . . the purported illegal downloading . . . than to say an individual who pays the telephone bill made a specific telephone call."); <u>Malibu Media, LLC v. Doe</u>, No. 15 CIV. 4369(AKH), 2015 WL 4092417 (S.D.N.Y. July 6, 2015) (denying motion for expedited discovery where the plaintiff merely pleaded an IP address was associated with downloading).

The Court is aware of authority that limits <u>Cobbler</u> to the motion to dismiss context.  In other words, some decisions hold that <u>Cobbler</u> only applies after the plaintiff has an opportunity to obtain discovery to identify a subscriber.  For example, in <u>Strike 3 Holdings, LLC v. John Doe</u>, No. 19-CV-00723-JCS, 2019 WL 2996428 (N.D.Cal. July 9, 2019), the Court ruled that <u>Cobbler</u>,

24

"does not stand for the proposition that subpoenas may not be used to determine a subscriber's name." Id. at 3.  However, the Court respectfully disagrees that Cobbler should be given a narrow reading.  First, the Ninth Circuit in Cobbler did not specifically address a discovery issue so the Court will not read into the decision a ruling that was not decided.  See Wright v. Spaulding, No. 17-4257, 2019 WL 4493487, at *5 (6th Cir. Sept. 19, 2019) ("For a court's conclusion about an issue to be part of its holding . . . the court must have actively applied the conclusion to the case in front of it. . . . [and] it must be clear that the court considered the issue and consciously reached a conclusion about it.") (citation omitted).  Second, for the reasons already stated, it would be anomalous to permit a plaintiff in a John Doe case to obtain discovery based on a futile boilerplate complaint.  Such bootstrapping must be barred in order to protect the integrity of the courts.  In this Court's view Cobbler carries just as much weight in the context of a motion for expedited discovery or motion to quash, as it does in the context of a motion to dismiss.  This is certainly not the first and only Opinion denying a motion for expedited discovery because of a deficient pleading.  Third, for the reasons already discussed, in the context of examining the totality of the circumstances to decide if expedited discovery should be granted, it is appropriate to examine in the first instance whether the complaint can withstand a dismissal motion.

A recent instructive decision from this District is Malibu Media v. Joe Park, No. 17-12107 (JMV)(MF), 2019 WL 2960146 (D.N.J. July 9, 2019).  In that case, plaintiff filed a copyright infringement complaint against an alleged John Doe infringer. Id. at *1.  The complaint was later amended to specifically name the subscriber who then defaulted. Id.  In denying plaintiff's unopposed motion for default judgment, the Court recognized that simply naming an IP subscriber does not make out a copyright claim and does not show that the subscriber is liable. Id. at *3.  The Court agreed with Cobbler and stated, "[p]laintiff will have to show something more than merely tying Defendant to an IP address in order to sufficiently establish copyright infringement."  Id. at *6;  see also In re BitTorrent Adult Film Copyright Infringement Cases, 296 F.R.D. at 84 ("[T]he assumption that the person who pays for internet access at a given location is the same individual who allegedly downloaded a single sexually explicit film is tenuous, and one that has grown more so over time."; Patrick Collins, Inc. v. John Doe 1, 288 F.R.D. 233, (E.D.N.Y. 2012) (collecting cases) (affirming Magistrate Judge's Report and Recommendation that expedited discovery be denied, and agreeing that the discovery of the subscriber's identify would not establish a reasonable likelihood of the identity of the defendant who could be sued).

The Court is not unsympathetic to Strike 3's argument that

without the requested discovery it may not be able to identify alleged copyright infringers.  After all, who can argue with the notion that Strike 3 has a right to protect its copyrights.  However, the fact that the law lags behind technology is not an ill this Court can cure.  The Court will not create a remedy for Strike 3 that does not exist under existing law.  Cobbler, 901 F.3d at 1146-47 ("While we recognize this obstacle to naming the correct defendant, this complication does not change the plaintiff's burden to plead factual allegations that create a reasonable inference that the defendant is the infringer."); Malibu Media v. Park, No. 17-12107 (JMV)(MF), 2019 WL 2960146, at *6 (D.N.J. July 9, 2019) ("The Court recognizes . . . that . . . technology limitations potentially puts a plaintiff in a difficult position in naming the correct defendant, but . . . such limitations do not relieve a plaintiff of alleging sufficient facts so that a court can reasonably infer that the named defendant is the actual infringer."); Strike 3 Holdings, LLC v. Doe, 331 F.R.D. 14, 20 (E.D.N.Y. 2019)(denying request for expedited discovery and stating, "Strike 3's concern about its ability to enforce its copyright against peer-to-peer file sharers is a valid one, but not one that provides good cause to depart from otherwise applicable discovery rules.  Also stating, "[t]he fact that Congress has not acted [to address the problem peer-to-peer file sharing technology creates], however, does not mean that courts

should take it upon themselves to provide more effective enforcement mechanisms to potential plaintiffs."); Hard Drive Productions, Inc. v. Does 1-90, No. C11-03825HRL, 2012 WL 1094653, at *7 (N.D. Cal. Mar. 30, 2012) (denying expedited discovery despite the court's recognition that plaintiff is aggrieved by the apparent infringement and the court's sympathy toward the copyright holder's argument that lawsuits are the only way for it to find and stop infringers). As was well stated in Strike 3 Holdings, LLC., 331 F.R.D. at 20:

> The enforcement problem that peer-to-peer file sharing technology creates for copyright owners is one that Congress could choose to remedy at any time. . . . The fact that Congress has not acted, however, does not mean that courts should take it upon themselves to provide more effective enforcement mechanisms to potential plaintiffs . . . .[The Court] conclude[s] that Strike 3's concern about its ability to enforce its copyright against peer-to-peer sharers is a valid one, but not one that provides good cause to depart from otherwise applicable discovery rules.

Further, as was stated in Strike 3 Holdings, LLC, 351 F. Supp. 3d at 165, "[m]aybe someday someone will show the Court a method to identify infringers with sufficiently less risk of false accusations. But because Strike 3 fails to do so here, it cannot subpoena defendant's ISP."

### 4. Besides the Futility of its Complaints, Other Reasons Exist to Deny Strike 3's Motions for Expedited Discovery

Even if the Court ruled that Strike 3's complaints would survive a Rule 12(b)(6) motion, it would still deny Strike 3's

requests for expedited discovery. No single factor accounts for the Court's finding that Strike 3's requests are unreasonable. Instead, the ruling is based on the totality of the circumstances which includes the following: (1) Strike 3 bases its complaints on unequivocal affirmative representations of alleged facts that it does not know to be true; (2) Strike 3's subpoenas are misleading and present too great of an opportunity for misidentification; (3) Strike 3's linchpin argument that there is no other way to stop infringement of its works other than to sue individual subscribers, is wrong; (4) Strike 3 does not exhaust reasonably available means to stop infringement besides filing individual lawsuits; (5) Strike 3's lawsuits do not appear to be especially effective in preventing and deterring infringement; and (6) Strike 3 unduly minimizes IP subscribers' privacy interests. The Court also recognizes that a subscriber will be materially prejudiced if it is wrongfully named in a lawsuit. Therefore, considering the overall administration of justice against the potential prejudice to a subscriber, the balancing of the interests falls in favor of denying Strike 3's requests for expedited discovery. This is true even though the Court's ruling may make it more difficult for Strike 3 to cease infringement of its copyrights.

A. <u>Strike 3 Bases its Complaints on Unequivocal Affirmative Representations of Alleged Facts that it Does Not Know to be True</u>

Even if Strike 3's complaints pass muster under Rule 12(b)

(6), Strike 3 pleads unequivocal statements of alleged facts that it does not know to be true. Strike 3 unequivocally avers that the John Doe IP subscriber "downloaded, copied, and distributed" its copyrighted works. Compl. ¶ 27. Yet, however, Strike 3 acknowledges it is equally as likely the subscriber or someone in the household is to blame for the infringement. TR2 21:21-22. Strike 3 also acknowledges that despite its unequivocal averments it does not know for certain where the subscriber lives. The fact that Strike 3 has to resort to making unequivocal statements of alleged facts that it does not know to be true in order to obtain expedited discovery, is troublesome and is a relevant fact the Court considers when it decides whether to grant Strike 3's discovery requests.

It appears to the Court that Strike 3 sacrifices the accuracy of its pleadings so that it can bootstrap expedited discovery. In other words, Strike 3 sacrifices accuracy for expediency. This was effectively acknowledged by Strike 3's counsel who stated: "[w]e do say it's the subscriber [as the named defendant] because that's what we're going to need the subpoena to help us get the further investigation." TR1 24:18-20. Strike 3's counsel also stated: "I think we're saying in our initial Complaint that the subscriber is going to get us to that infringer." TR1 24:9-10. Strike 3 acknowledges its complaints are filed for the "sole purpose" of enabling it to seek leave to conduct expedited discovery[.]" LB

at 3 (July 15, 2019).  This Court is not the only Court troubled
by Strike 3's pleadings.  In Strike 3 Holdings, LLC, 331 F.R.D.
at 19, the Court denied Strike 3's request for expedited discovery
and wrote:

> It is thus apparent that Strike 3 is deliberately
> asserting claims in a scattershot fashion against a
> broad array of individuals simply because it is
> confident that many of them will be liable – even if
> almost as many of them are not.  Such a pleading seems
> wholly inconsistent with the requirement that a
> plaintiff may not file a complaint for an improper
> purpose . . . .[T]he certainty that such an approach
> will impose needless burdens on innocent individuals
> counsels against a finding of good cause to permit
> expedited discovery.

The Court agrees.

### B. Strike 3's Subpoenas are Misleading and Create too Great of an Opportunity for Misidentification

Apart from the questionable averments in Strike 3's
complaints, the Court has come to learn that Strike 3's subpoenas
are misleading.  Prior to its recent inquiries, the Court assumed
Strike 3's subpoenas identified the name of the IP subscriber when
its works were infringed.  However, the Court was wrong.

Strike 3's subpoenas only seek to identify the infringer to
one of its works.  There is no "particular rhyme or reason" to the
one listed infringement date listed in Strike 3's subpoenas except
Strike 3 always "choose[s] the first one that's been expedited
with the copyright office, has a registration, and is within the
ISP's data retention." (alteration in original) TR2 58:22-25 to

59:1-2.   The problem with Strike 3's subpoenas is that Strike 3
does not reveal that the subscriber identified by its subpoenas
may not be the subscriber when its work was infringed.   For
example, as to the exemplar complaint Strike 3 alleges 31 works
were infringed from December 3, 2017 to August 16, 2018.   Strike
3's November 13, 2018 subpoena [Doc. No. 7-1] only asks for the
name of the IP subscriber on July 27, 2018.   In its motions Strike
3 does not mention that due to dynamic IP addresses the name of
the subscriber identified by Strike 3's November 13, 2018 subpoena
may not be the person who subscribed to the same address on July
27, 2018.   This information is not revealed by Strike 3 even though
Strike 3 recognizes there are a limited number of IP addresses,
the addresses are dynamic, and they therefore change.   Strike 3
knows that at different times different people can have the same
IP address.   TR2 28:6-14.   This fact is recognized by numerous
courts.   See Call of the Wild Movie, LLC v. Does 1-1,062, 770 F.
Supp.2d 332, 356 (D.D.C. 2011) ("[F]or dynamic IP addresses, a
single IP address may be reassigned to many different computers in
a short period of time."). Significantly, in United States v.
Vosburgh, 602 F. 3d 512, 523 (3d Cir. 2010), the Court cited the
testimony of a Comcast witness who testified that the lease period
for each IP address is approximately 6-8 days and that after the
expiration of the lease, the assignment of an IP address to a
particular computer may or may not be renewed.   In Strike 3

32

Holdings, LLC, 2019 WL 3069760, at *1 n.1, the Court noted:

> An IP address is not really an "address" or physical
> "place" in the usual sense of the words, and therefore
> the term can be quite misleading.  In fact, it is only
> an electronic "route" to the Internet assigned by a
> Provider to a customer on a given date and hour to
> provide access to the internet.  The route can be
> assigned to different customers on given dates or given
> [hours].  If a customer accesses the Internet briefly
> and signs off, the IP address is assigned to another
> customer.

Courts routinely recognize the dynamic nature of IP addresses
and how often they change.  The fact that IP addresses change so
frequently creates a significant opportunity for
misidentification.  Reid, 194 N.J. at 390-91.  ("Most often when
an individual connects to the Internet, his or her Internet Service
Provider dynamically assigns an IP address to the computer, which
can change every time the user accesses the Internet.  In other
words, the 'dynamic' IP address assigned to the computer can be
different for each internet session."); Call of the Wild Movie,
LLC, 770 F. Supp.2d at 356-57 ("Most consumer IP addresses are
dynamic as opposed to 'static' . . . . Dynamic IP addresses are
randomly assigned to internet users, and change frequently.
Consequently, for dynamic IP addresses, a single IP address may be
reassigned to many different computers in a short period of time.
Associating a dynamic IP address with a particular customer at a
given moment makes the task of 'discovering the identity of a
particular infringer more difficult.'"); Klimas v. Comcast Cable

Communications, Inc., No. 02-CV-72054-DT, 2003 WL 23472182, at *5 (E.D. Mich. July 1, 2003), aff'd sub nom. 465 F. 22271 (6th Cir. 2006)("Dynamic IP addresses constantly change"); Criminal Productions, Inc. v. Doe, Case No. 16-cv-2352 WQH (JLB), 2016 WL 6581850, at *2 (S.D. Cal. Nov. 7, 2016) (citation and quotation omitted) ("In the context of dynamic IP addresses, a person using [a particular IP] address one month may not have been the same person using it the next."); Strike 3 Holdings, LLC v. Doe, Case No. 19-cv-00723-JCS, 2019 WL 2996428, at *2 (N.D. Cal. July 9, 2019)(recognizing "the inherent imprecision of an IP address as a means to identify the individual who purportedly infringed Strike 3's copyrights").

Given the dynamic nature of IP addresses, the Court cannot be sure that the subscriber's name revealed by Strike 3's subpoenas is the name of the subscriber on the infringement date. Klimas, 2003 WL 23472182, at *5 ("Dynamic IP addresses constantly change and unless an IP address is correlated to some other information . . . it does not identify any single subscriber by itself."). Strike 3 could conduct a more diligent search if it asked for the subscriber's name on the date all 31 of its works were downloaded (or a representative number) instead of just a single date. However, Strike 3 does not do this because of cost. TR1 96:13-25 to 97:1-5. Further, even if the names of the IP subscribers for all 31 works are identified, the names are not necessarily the

subscribers on the dates of the infringing activity.  In the past, when the Court granted Strike 3's discovery motions, it incorrectly assumed the name of the subscriber identified by Strike 3's subpoenas was the same subscriber on the date of the alleged infringement.  The Court also incorrectly assumed the listed IP address was permanent and only belonged to one person.  The Court now knows this is not necessarily the case.  It is implausible that Strike 3 is not aware of the substantial body of case law discussing the problems with dynamic IP addresses.

It is also not insignificant an ISP may not possess the subscriber's name.  According to Strike 3, it is questionable whether subscribers retain data for more than three (3) months. TR2 18:4-12; 23:7-25 to 24:1-4; see also Mem. of Law in Supp. of Pl.'s Mot. at 2, Doc. No. 4-1 ("John Doe Defendant's ISP only maintains the internal logs of the requested information for a brief period of time.").  Given that Strike 3 almost always identifies infringing activity that occurs earlier than three (3) months before its subpoena, subscriber defendants are at a distinct disadvantage because the ISP may not have the records to show who subscribed to the listed IP address on all the dates of the alleged infringing activity.  The problems associates with IP addresses was discussed in a recent law review article:

> IP addresses are not people. Indeed, IP addresses are
> often used by multiple people in ways that make it very
> difficult to be sure who is responsible for what

activity. Routers are left unsecured or with factory
defaults; passwords are shared with family members,
roommates, guests and neighbors; unsecured guest
accounts are created and then forgotten; passwords are
cracked; passwords are reused across different contexts
(and once a password is guessed or compromised in one
context it is worthless in all of them); and backdoors
are opened up by malware and unsecure devices, including
printers and even refrigerators.

In addition, there are a variety of ways that a hacker
can hide their own IP address by using someone
else's. Regardless of whether IP addresses can be
tracked reliably in other contexts, they may be
particularly unreliable in the BitTorrent context,
because the BitTorrent protocol was designed to allow
high-bandwidth connections and thus "does not perform …
source IP address validation." In practice, this means
that the header information (think of the envelope on a
letter in the postal system) transmitted by a swarm
participant can display someone else's IP address. This
problem is compounded by the fact that many sites
coordinating BitTorrent swarms "inject random IP
addresses into their swarm list results."

See Matthew Sag and Jake Haskell, Defense Against the Dark
Arts of Copyright Trolling, 103 Iowa L. Rev. 571, 590-91
(2018).

> C. Strike 3 Has Other Available Means to Stop Infringement
> Besides Suing Individual Subscribers in John Doe Complaints

Strike 3's linchpin argument for why expedited discovery
should be granted is that, otherwise, it is powerless to prevent
infringement of its works.  See Mot. at 11 ("[I]dentifying and
serving the alleged infringers is the only method through which
Plaintiff can protect its copyright interests.") (citation and
quotation omitted).  Strike 3 further argues that if its request

for expedited discovery is denied, it "would be to declare that copyright infringement is de facto legal, provided it is done through BitTorrent, because the courts are powerless to stop it." LB at 10 (June 11, 2019). The Court rejects Strike 3's argument which provides another reason why Strike 3 has not established good cause to obtain expedited discovery.  There are other available means for Strike 3 to prevent infringement of its works that Strike 3 has chosen not to pursue.  It is unreasonable to grant Strike 3 expedited discovery when Strike 3 chooses not to avail itself of legal remedies that do not involve filing thousands of complaints that impinge on the constitutionally protected privacy rights of New Jersey subscribers to ISP's.

Passed in 1998, the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512(a), provides a series of "safe harbors" to ISP's that limit their liability for copyright infringement. However, in order to fall within the safe harbor, the ISP must show that it has "adopted and reasonably implemented . . . a policy that provides for the termination in appropriate circumstances of subscribers . . . who are repeat infringers."  17 U.S.C. §512 (i)(1)(A).  UMG Recordings, Inc. v. Grande Communications Networks, LLC, 384 F.Supp.3d 743, 755 (W.D. Tx. 2019) ("[T]o be eligible for the DMCA safe harbor, an ISP must 'reasonably implement' a termination policy, not just adopt one."). To assess whether an ISP has reasonably implemented a repeat infringer

termination policy, the relevant question to ask is whether the ISP actually terminates the uploading privileges of repeat offenders under appropriate circumstances.  Id.

The DMCA affords copyright owners such as Strike 3 a process to notify ISP's of the infringement of their works.  The ISP's are then required to act on valid notifications and to terminate, in appropriate circumstances, subscribers and account holders who are repeat offenders.[16]  Courts have not defined a specific number of strikes against a user that require an ISP to suspend or terminate that user's access to the internet.  Rosen v. eBay, Inc., No. CV 16-9183-MWF(Ex), 2018 WL 4808513, at *6 (C.D. Cal. Apr. 4, 2018). Comcast, for example, has a multi-step policy and reserves the right to suspend or terminate service to a repeat infringer who receives multiple DMCA notices.  See Comcast's DMCA Repeat Infringer Policy for Xfinity Internet Service, supra note 16. Specifically, Comcast's serial infringer policy provides as follows:

> Triggering steps under this policy may result in the following: a persistent in-browser notification or other form of communication that requires you to log in to your account or call us; a temporary suspension of, or other interim measures applied to, your service; the termination of your Xfinity internet service as well as your other Xfinity services[.]

---

[16] The Repeater Infringer Policy of each ISP can be found on the internet. See Comcast's DMCA Repeat Infringer Policy for Xfinity Internet Service, https://www.xfinity.com/support/articles/comcast-dmca-compliance-policy (last visited Oct. 24, 2019) (providing information about Comcast's Repeat Infringer Policy).

*Id.*

One would think that Strike 3 would be eager to notify ISP's that its subscribers are infringing their copyrights, so that an infringer's internet service would be interrupted, suspended or terminated and infringement would stop.  However, Strike 3 does not take this simple step but instead files thousands of lawsuits arguing that it has no other recourse to stop infringement. Strike 3 admits that, with regard to the exemplar subscriber and its other John Doe defendants, it did not send ISP's take down notices. TR1 113:15-18; TR2 45:4-8.  Inexplicably, Strike 3 does not send take down notices concerning the individual subscribers it sues, but yet it sends these notices to torrent websites, Google, and infringing websites like The Pirate Bay.  TR1 110:12-25.  As discussed, although Strike 3 has the right to notify ISP's of infringing activity, and ISP's can disable the infringer's internet access, Strike 3 does not send take down notices regarding the John Does that it sues.  In support of its discovery motions it is unreasonable for Strike 3 to argue that it has no alternative to filing John Doe complaints, while not using the protections afforded to it under the DMCA.  The Court recognizes there is no exhaustion requirement that requires Strike 3 to send take down notices before it files its copyright cases.  However, it is not reasonable for Strike 3 to argue it has no recourse but to seek expedited discovery when it ignores the DMCA.

Strike 3's arguments for why it does not send take down notices concerning its John Does defendants are not persuasive. It is not plausible that Strike 3 cannot find an outside service to send out its notices. Even if true, Strike 3 can serve its own take down notices. Further, the Court does not accept Strike 3's argument that take down notices are fruitless.

A recent case that debunks Strike 3's futility argument is BMG Rights Mgmt. (US) LLC v. Cox Commc'n., Inc., 881 F.3d 293 (4th Cir. 2018). In that case BMG sued Cox, an ISP. Id. at 298. BMG owns copyrights to musical compositions and sued to hold Cox contributorily liable for the infringement of BMG's copyrights by Cox's customers. Id. As part of its defense, Cox argued it was immunized from liability because of the safe harbor provision in the DMCA. Id. at 300-01. However, the Court ruled that Cox could not assert a "safe harbor" defense because it did not reasonably implement its repeat infringer policy. Id. at 303. Thus, if an ISP such as Comcast willfully ignores Strike 3's DMCA notices and/or does not follow its repeat infringer policy, Strike 3 has the option of bringing an action against the ISP.[17] In the event ISP's are not taking Strike 3's notices seriously, the possibility of lawsuits akin to BMG's complaint may spur ISP's to more

---

[17] The Court is not encouraging Strike 3 to file these lawsuits. The Court simply cites to BMG to debunk Strike 3's argument that there are no alternatives to stopping a subscriber from infringing other than to file John Doe complaints seeking expedited discovery.

faithfully comply with their repeat infringer policies and suspend or bar internet service to repeat infringers.   One would expect this to create a substantial incentive for persons to stop the infringement of Strike 3's works.

     D. <u>The Deterrent Effect of Strike 3's Lawsuits is Questionable</u>

     While the Court recognizes Strike 3 has the right to protect its copyrights, it is not clear, as Strike 3 argues, that its complaints are effective in preventing and deterring infringement. Strike 3 might engender more sympathy if its lawsuits effectively deterred infringers.   This does not appear to be the case. Despite filing thousands of copyright complaints, Strike 3 recognizes infringement of its works has increased.   (Albeit, Strike 3 attributes this to the increased popularity of its sites). In addition, Strike 3 estimates that between 200,000 to 400,000 people illegally download its videos every month. TR1 126:16-22; TR2 84:8-12.   Also, the Court recently learned that Strike 3 only targets the limited universe of residential subscribers of reputable ISP's. TR2 37:7-19; 83:15-19.   As a result, "granting [Strike 3] leave to issue subpoenas . . . will do little if anything to deter future copyright violations.   [Consequently], Strike 3's interest in enforcing its rights does not constitute good cause to allow premature subpoenas." <u>Strike 3 Holdings, LLC</u>, 331 F.R.D. at 19.

E. Prejudice to Subscribers

Thus far, the Court's balancing has not focused on the interests of the innocent "John Doe" or subscriber defendant. However, the substantial prejudice that may inure to a subscriber from the release of its private information and the possible false identification in a lawsuit is significant. The innocent subscriber may have to pay a substantial sum to retain a lawyer to defend the lawsuit, or possibly settle to avoid incurring future costs. The innocent subscriber may also be subject to unduly intrusive discovery such as searches of his/her computer and social media. In addition, negative publicity and embarrassment may occur from being named in a copyright infringement lawsuit. Also, the fact that the innocent subscriber was named in a lawsuit may be revealed in an unrelated employment or credit search.

Importantly, Strike 3 unduly minimizes the subscriber's substantial interest in the privacy of his/her subscription information. See Mot. at 12 ("John Doe Defendant's privacy interest is minimal[.]" Although there may not be a Fourth Amendment expectation of privacy in internet subscriber information, "Article 1, Paragraph 7 of the New Jersey Constitution protects an individual's privacy interest in the subscriber information . . . provide[d] to an internet service provider." Reid, 194 N.J. at 399; see also In re Nickelodeon Consumer Privacy Litigation, MDL No. 2443 (SRC), 2014 WL 3012873, at *18 (D.N.J.

42

July 2, 2014) ("[T]he right to privacy created by the New Jersey Constitution provides greater protection than the privacy right created by the federal Constitution.") (citation omitted). The Court is not ruling that subscriber information may never be disclosed in response to a subpoena. However, given the expansive view of individual privacy under New Jersey law, there should be a good reason before subscriber information is turned over. This is especially true in a situation where questionable averments are relied upon to obtain discovery.

    F. <u>Rebuttal of Strike 3's Arguments</u>

No good reason exists to grant Strike 3's requests for expedited discovery since its complaints do not plead a cognizable claim. Even if the complaints pass muster, the danger of a false identification and the prejudice it may cause outweighs Strike 3's interest in obtaining expedited discovery. Relevant to this balancing is the fact that Strike 3's lawsuits may not effectively deter infringement, and other reasonably available and less intrusive legal recourse is available to Strike 3 to prevent infringement.

Strike 3 argues the Court should trust it to only name defendants against whom it has a "rock-solid" case. The Court agrees with the following statement made in a recent decision rejecting Strike 3's argument:

I have no reason to question the sincerity of Strike 3's

43

stated commitment to ethical conduct. But as a practical matter, its assertion in that regard is no more than a promise that a Court must hope it will fulfill because it has no realistic prospect of meaningful judicial oversight…I conclude that Strike 3's promises, and its history of avoiding judicial oversight after securing leave to serve subpoenas, do not satisfy the good cause standard.

Strike 3 Holdings, LLC, 331 F.R.D. at 18.

None of Strike 3's arguments for why good cause exists to grant expedited discovery carry the day. Strike 3 argues it has pleaded a prima facie claim for direct copyright infringement against the John Doe IP subscriber. The Court disagrees for the reasons discussed. Even if Strike 3 passes this initial threshold, the Court has shown that Strike 3's averments are conclusory. Also, that Strike 3 relies upon unequivocal affirmative representations of alleged facts that it does not know to be true. Strike 3 argues that since its discovery requests are narrowly tailored, they should be granted. However, due to the prevalence of dynamic IP addresses, Strike 3's narrow discovery requests create a greater likelihood of misidentification than broader requests. Strike 3 argues there is no alternative means to discover the identity of subscribers. While this may be true, Strike 3 acknowledges it does not know if the subscriber infringed its works. Although Strike 3's subpoenas request relevant information, this is not the touchstone for expedited discovery. Strike 3 argues the subscriber's identity is necessary to advance

its infringement claim.   Strike 3 ignores the fact that the law does not provide a remedy for every wrong.   Last, Strike 3 argues the subscriber will not be prejudiced by its subpoenas.   To the contrary,   the   subpoenas   infringe   the   subscriber's   privacy interests and result in substantial prejudice to a misidentified alleged infringer.

Conclusion

In conclusion, the Court finds that good cause does not exist to grant Strike 3's motions for expedited discovery.   Based on the extensive record, it is unreasonable to grant Strike 3's motions. The Court agrees with Judge Lamberth's ultimate ruling but relies upon a different emphasis.   Granting expedited discovery is the exception rather than the rule, and a good reason must exist to grant the discovery. Especially in the John Doe or ex parte discovery context, it is appropriate to closely scrutinize whether a pleading is futile or passes muster.   Expedited discovery is not justified when Strike 3 bootstraps its discovery requests onto a deficient pleading that would not survive a Rule 12(b)(6) motion.

Even if Strike 3's complaints would survive a Rule 12(b)(6) motion,   the   requested   discovery   would   still   be   denied.   The minimal subscriber information Strike 3 requests in its subpoenas is misleading and does not account for the prevalence of dynamic IP addresses.   Consequently,   Strike 3's discovery creates too great of an opportunity for misidentification.   Further, the

linchpin of Strike 3's argument for good cause, that there is no alternative option to prevent the infringement of its works other than to identify a subscriber via an expedited subpoena to an ISP, is wrong.  Other means are reasonably available to Strike 3 besides filing thousands of individual John Doe lawsuits.  When the foregoing is weighed against the prejudice that may result to an innocent subscriber defendant, including the invasion of a constitutionally protected privacy interest recognized by the New Jersey Supreme Court, the balance falls in favor of denying Strike 3's discovery motions.

The Court is not unmindful that its ruling may make it more difficult for Strike 3 to identify copyright infringers.  To the extent this is the price to pay to assure compliance with the applicable law, so be it. A legal remedy does not exist for every wrong, and it is unfortunately the case that sometimes the law has not yet caught up with advanced technology.  This is not the first time, nor will it be the last, where a party who believes it was wronged was denied discovery.

Accordingly, for the foregoing reasons, and to the extent it has not already been done, it will be Ordered that Strike 3's motions for expedited discovery are DENIED.  To the extent these motions have been previously granted, and the defendant has not yet been served, the Orders will be vacated.  The Court will not interfere with cases where Strike 3 has identified a defendant

other than through an expedited discovery subpoena issued with
leave of Court.

                                    s/ Joel Schneider
                                    JOEL SCHNEIDER
                                    United States Magistrate Judge




DATED: October 24, 2019